546 So.2d 1265 (1989)
STATE of Louisiana
v.
Kerry BROWN.
No. KA 88 1322.
Court of Appeal of Louisiana, First Circuit.
June 20, 1989.
*1267 Bryan Bush, Dist. Atty., Baton Rouge by James Murray, Asst. Dist. Atty., for plaintiff-appellee.
Otha C. Nelson, Baton Rouge, for defendant-appellant.
Before COVINGTON, C.J., and LOTTINGER and FOIL, JJ.
LOTTINGER, Judge.
Kerry L. Brown was charged by grand jury indictment with (Count I) aggravated *1268 kidnapping and (Count IV) aggravated rape. La.R.S. 14:44 and 14:42. Defendant pled not guilty. Following trial by jury, he was convicted as charged in Count I and convicted of the responsive offense of forcible rape in Count IV.[1] The trial court sentenced defendant to a term of life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence on the aggravated kidnapping conviction. On the forcible rape conviction, defendant was sentenced to a period of twenty-seven years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, to run concurrently with the other sentence.
Defendant brings this appeal, urging nineteen assignments of error:
(1) The trial court erred by refusing to require a transcription of the voir dire examination for appellate purposes.
(2) The trial court erred by allowing Officer Curtis Luttrell to testify as to what he had been told by the alleged victims.
(3) The trial court erred by overruling defendant's objection concerning a legal conclusion drawn by Officer Curtis Luttrell.
(4) The trial court erred by allowing Officer Mike Morris to testify that the victims said the third man found in defendant's automobile at the time of his arrest was not implicated in the instant crime.
(5) The trial court erred when it failed to grant a mistrial when a juror began to cry during the testimony of the victim.
(6) The trial court erred when it allowed the victim to answer a leading question.
(7) The trial court erred when it refused to allow defense counsel to ask defendant's sister if defendant was the kind of man who is aggressive with women.
(8) The trial court erred when it refused to allow defense counsel to ask defendant's mother if she experienced any difficulty in raising defendant.
(9) The trial court erred when it refused to recuse itself with respect to defendant's motion for a new trial.
(10) The trial court erred by refusing to allow defendant to proffer testimony related to his motion for recusal of the trial judge.
(11) The trial court erred when it refused to issue subpoenas to various witnesses.
(12) Defendant was the victim of double jeopardy because his first trial held jointly with co-defendant Emanuel Gordon ended in a mistrial.
(13) The trial court erred when it failed to grant defendant a new trial.
(14) The instant jury verdicts are contrary to the law and to the evidence.
(15) Defendant's sentence for aggravated kidnapping constitutes cruel and unusual punishment.
(16) Defendant's sentence for forcible rape constitutes cruel and unusual punishment.
(Supplemental Assignment of error number 1) The trial court erred when it allowed the state to successfully challenge for cause prospective jurors Jefferson Gray, Jr. and Jonathan Riley. Defendant was deprived of the right to a trial before a fair and impartial jury because blacks and males were systematically excluded.
(Supplemental Assignment of error number 2) The trial court erred when it allowed the state to peremptorily challenge prospective juror Vera Poledore, a black female, in violation of Batson v. Kentucky.
(Supplemental Assignment of error number 3) The trial court erred when it allowed the state to peremptorily challenge prospective juror Woodrow Wascom, a young white male.

*1269 FACTS
At approximately 10:00 p.m. on December 19, 1986, the victims, Jane Doe and her sister, Mary Smith, were shopping at a department store located on Florida Boulevard in Baton Rouge.[2] When the store closed at 10:00 p.m., the victims walked into the parking lot and discovered that Ms. Doe had locked her keys inside her automobile. After several fruitless attempts to secure assistance, the victims observed defendant and Emanuel Gordon drive into the parking lot in a Chevrolet Impala automobile. Defendant and Gordon approached the victims and offered their assistance. The victims explained that the keys were locked in their car, and the police had been summoned to assist. A short time later, defendant and Gordon managed to get Ms. Doe's car door open. After pretending to have lost his own keys in the process, Gordon produced a screwdriver and grabbed Ms. Smith's arm, threatening to harm her if both women did not follow his instructions. With both victims seated in their own automobile, Gordon got into the back seat and ordered Ms. Doe to drive; she refused. Gordon then climbed into the front seat and drove the victims' automobile to the rear of the store parking lot. After threatening both women with the screwdriver, Gordon ordered them to disrobe. Gordon raped Ms. Doe in her car, and defendant raped Ms. Smith in the back seat of Gordon's car.
After the instant rapes, defendant and Gordon left in Gordon's car. The victims proceeded to the police station. On their way they observed a parked police car. They related to police officer Curtis Luttrell what had happened to them. Officer Luttrell radioed a description of the two assailants, their clothing, and their automobile, which resulted in the arrest of defendant and Gordon only minutes later. Thereafter, the two women were driven to the scene of the arrest by the police and positively identified defendant and Gordon as the two assailants.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant complains of the trial court's refusal to order a complete transcription of the instant voir dire examination despite the fact that that proceeding was designated for inclusion in the appellate record and included numerous objections by defendant.
Finding a review of the voir dire examination necessary for full consideration of several assignments of error raised herein, this Court ordered its inclusion in the appellate record. The district court has complied. Therefore, this assignment of error is now moot.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant contends that the trial court erred by allowing Officer Curtis Luttrell to testify, over defendant's hearsay objection, about certain statements made to him by the victims. We disagree, finding that the disputed testimony was properly admitted as an early complaint of a rape victim, a well-recognized exception to the hearsay rule.
The record reveals that, a few minutes after leaving the parking lot where they had been raped, the two victims approached Officer Luttrell, who was patrolling in a nearby area. Officer Luttrell testified that the women were emotionally upset and crying as they described the recent encounter, and gave a detailed description of the assailants and their conduct.
When there is an explained lapse of time between the rape and the victim's complaint, and when the utterance is spontaneous, the person to whom the complaint is made is allowed to repeat the complaint in court. State v. Elzie, 351 So.2d 1174 (La.1977). Clearly the instant complaints made to Officer Luttrell were a spontaneous reaction to a sufficiently startling event and not the result of reflective thought. The statements were made very shortly after the women had been raped and while they were still under the pressure and emotion of the traumatic event. See State v. Yochim, 496 So.2d 596, 598-601 *1270 (La.App. 1st Cir.1986). Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant contends that the trial court erred by overruling defendant's objection to Officer Luttrell's recitation of the victims' statements to him because that testimony amounted to a legal conclusion by the officer that the victims, in fact, had been raped.
During the course of his testimony, Officer Luttrell was asked what information he had learned after talking to the victims. His response was that he learned from both of the subjects that they had been raped. Officer Luttrell's testimony merely recounted the content of the statements made to him by the rape victims shortly after the crimes occurred. As discussed in the previous assignment of error, first complaints of rape victims, made under these circumstances, constitute an exception to the hearsay rule and may be the subject of testimony by the person to whom they are made. Officer Luttrell was not asked, nor did he give, his opinion of what actually transpired between the victims and their assailants. Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
By this assignment of error, defendant contends that the trial court erred by allowing Officer Mike Morris to testify that one of the victims told him that a third man present with defendant and Gordon at the time of their arrest had not participated in the instant offenses. Defendant contends that such testimony was patently erroneous, illustrating the nonchalant attitude with which the trial court conducted the instant trial. We disagree, finding no error.
The record reveals that Officer Morris responded to the police radio communique, wherein the perpetrators of the instant offenses and their vehicle were described. Morris testified that, shortly thereafter, he stopped a vehicle meeting the radioed description about two miles from the rape scene. The victims were immediately transported to that location and positively identified defendant and Gordon as their assailants. During this encounter, one of the victim's noted that the third occupant of Gordon's vehicle had not been present at the rape scene.
Officer Morris' testimony was not offered for the truth of the matter asserted but rather to explain the information upon which his police actions were based. Moreover, it was the character of the encounter and not the identity of the perpetrators which is contested by defendant herein. Defendant took the stand on his own behalf, admitting that he and Gordon were the two individuals who had sexual relations with the instant victims.
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 5
In this assignment of error, defendant contends that the trial court erred by failing to grant a mistrial when a seated juror began to cry during the trial testimony of Ms. Doe.
The record reveals that, during Ms. Doe's testimony concerning details of the encounter with her assailants, juror Yang Tsay became visibly upset and began to cry. Thereafter, defendant moved for a mistrial, reasoning that Ms. Tsay was incompetent to proceed. The trial court responded by removing the other jurors from the courtroom and allowing an examination of Ms. Tsay by the prosecutor and defense counsel. During that examination, Ms. Tsay indicated that she felt very sorry for Ms. Doe because of the ordeal described and Ms. Doe's apparent deeply religious orientation. Subsequently, the trial court denied defendant's motion for a mistrial, finding that Ms. Tsay was competent to continue as a juror. The trial court rejected defendant's argument that a mistrial should be granted because Ms. Tsay allegedly gave a false statement during voir dire. We find no error with the trial court's rejection of the arguments raised by defendant.
*1271 There is no indication that the crying incident prejudiced the defendant in any way. As the prosecutor noted, Ms. Doe's testimony was very emotional. It is not uncommon for a juror to react to emotional testimony. The trial court quickly responded to the incident. The time given to Ms. Tsay to regain her composure was sufficient to remedy the situation.
Louisiana Code of Criminal Procedure article 775(6) provides that a mistrial may be ordered when false statements of a juror on voir dire prevent a fair trial. In the instant case, when questioned about her religious affiliation during voir dire examination, Ms. Tsay stated that she was a Baptist. There is no indication in the record that this response was false. Ms. Tsay did note that she was particularly moved by Ms. Doe's testimony because both she and Ms. Doe attended Jimmy Swaggart's church. However, such occasional attendance of religious services at facilities of another denomination is not inconsistent with Ms. Tsay's asserted religious affiliation. Moreover, it falls far short of prejudicial conduct which denies a defendant a fair trial.
Defendant's alternative argument in support of his motion for mistrial is based on a line of jurisprudence which was expressly overruled by the Louisiana Supreme Court in 1982. In State v. Buggage, 351 So.2d 95 (La.1977), and State v. Rounsavall, 337 So.2d 190 (La.1976), the Louisiana Supreme Court decided that the trial courts therein erred by each excusing a juror who had been rendered unable to perform or disqualified from performing his duties and allowing an alternate juror to serve in his stead. In State v. Marshall, 410 So.2d 1116 (La.1982), the Louisiana Supreme Court departed from that reasoning and concluded that a trial court acts properly when it replaces a disqualified juror with an available alternate. In urging his motion for a mistrial, defendant vehemently opposed substitution of the alternate juror for Ms. Tsay, emphasizing that mistrial was the only relief sought. Failing to move to substitute the alternate juror before deliberations waived any objection to Tsay. See State v. Edwards, 412 So.2d 1029, 1033 (La.1982).
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error, defendant contends that the trial court erred by allowing Ms. Smith to answer an allegedly leading question.
A leading question is one which suggests to the witness the answer he is to deliver. Ordinarily, such questions are prohibited when posed to one's own witness unless the witness is hostile or unwilling. La.R.S. 15:277. The purpose of the rule is to guard against the danger that a witness will acquiesce to a false suggestion. State v. Prestridge, 399 So.2d 564, 573 (La.1981). Nevertheless, the matter is largely within the discretion of the trial court. Only a clear abuse of that discretion, which prejudices defendant's rights, will justify the reversal of a conviction. State v. Jones, 439 So.2d 598, 599-600 (La.App. 1st Cir. 1983).
In the instant case, defendant objected to the prosecutor's asking Ms. Smith if she believed defendant might do something to her after he grabbed her on the arm and pushed her inside Gordon's automobile. This question was not leading. Ms. Smith had already testified that defendant grabbed her arm and pushed her inside Gordon's car. Thus, the prosecutor was merely asking the witness if she believed defendant would carry through with his assertive threats.
There is no indication that the witness acquiesced to false suggestions. There was no clear abuse by the prosecution calculated to prejudice defendant's rights, nor was there an abuse of discretion by the trial court warranting reversal.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 7 AND 8
By these assignments of error, defendant contends that the trial court erred by *1272 sustaining the state's objections to certain questions propounded by defendant to Brenda Collins, defendant's sister, and Delia Floyd, defendant's mother. We disagree.
Defendant called these two witnesses to show that the crimes charged were inconsistent with his character. It is settled law in Louisiana that character evidence is limited to knowledge of defendant's general reputation and may not include opinion testimony. La.R.S. 15:479; see also State v. Johnson, 389 So.2d 372, 377 (La.1980).
In this case, each witness was asked if she believed defendant was the type of individual capable of the violent, aggressive conduct described by the victims herein. These questions elicited the witnesses' opinion rather than their knowledge of his general reputation. Accordingly, the state's objections to the form of the questions were properly sustained.
Thus, these assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 9
By this assignment of error, defendant contends that the trial court erred by failing to recuse itself in response to a defense motion requesting recusation of the trial court filed after the instant jury verdicts.
In this case, defendant grounded his motion on the assertion that matters related to the instant conviction should be considered by another trial judge since he intended to call the presiding judge as a witness at his motion for new trial to reveal that judge's bias toward defendant.
Initially, we note that La.Code Crim.P. art. 674 requires a motion for recusal to be filed prior to commencement of trial unless the party discovers the facts constituting the ground for recusal after the trial begins. State v. Manning, 380 So.2d 54, 58 (La.1980). Since defendant failed to present any factual basis for the relief sought, timeliness of the motion is doubtful.
It is well settled that a trial judge is presumed to be impartial. For an accused to be entitled to the recusation of a trial judge on grounds of bias, prejudice, and personal interest, such bias, prejudice and personal interest must be of a substantial nature based on more than mere conclusory allegations. La.Code Crim.P. art. 671; State v. Edwards, 420 So.2d 663, 673 (La.1982). The instant allegation that the trial judge was not impartial does not warrant recusation. Such a claim is merely conclusory and does not present any factual basis for the motion. See State v. Gordy, 380 So.2d 1347, 1352-1353 (La.1980). Therefore, defendant's motion to recuse failed to present factual allegations that would, if proved, amount to substantial bias or prejudice on the part of the trial judge.
Moreover, since the motion for recusal did not set forth allegations of fact which state a statutory cause for recusation, the trial judge was not required to refer the motion to another judge for hearing. See State v. Beavers, 394 So.2d 1218, 1229 (La.1981).
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 10
By this assignment of error, defendant contends that the trial court erred by not allowing defendant to proffer testimony in support of his motion for recusal of the trial judge. In brief, defendant fails to make any argument supporting such a contention. Rather, under this assignment, he cites cases directed to sufficiency of the evidence. Accordingly, we consider the assignment of error as abandoned since it was not briefed in even a remotely responsive manner. See Uniform RulesCourts of Appeal, Rule 2-12.4.
Thus, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 11
By this assignment of error, defendant contends that the trial court erred by not issuing subpoenas to various witnesses.
*1273 Particularly, defendant contends that he should have been allowed to subpoena certain witnesses for a post-trial hearing to demonstrate juror Yang Tsay's emotional state during trial on the merits.
Among the people sought to be subpoenaed were the trial judge, the assistant district attorney, and the bailiff. As the trial judge pointed out, most of those people were present in court at the time of the hearing. Since these people were available to testify, it was unnecessary to issue the subpoenas. In addition, both the trial judge and the assistant district attorney stated for the record their observations of Ms. Tsay. Specifically, the prosecutor noted that Ms. Tsay was upset. The trial judge observed that she still "teared-up somewhat" after her initial emotional display.
Defendant also wished to call each of the jurors to determine if Ms. Tsay's emotional reaction to the victim's testimony influenced the jury deliberations. The trial court properly aborted this line of inquiry. In the absence of a substantial showing of a violation of defendant's constitutional rights, a defendant should not be allowed to call the jurors to explain their verdict. See La.R.S. art. 15:470; State v. Graham, 422 So.2d 123, 131-132 (La.1982).
For the foregoing reasons, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 12
By this assignment of error, defendant contends that the instant trial on the merits was barred by grounds of double jeopardy because his first trial, held jointly with co-defendant Emanuel Gordon, ended in a mistrial.
As noted previously, defendant and Gordon were scheduled to be tried together. However, during the state's case-in-chief, defendant moved for, and was granted, a mistrial when his counsel was unable to continue because of her daughter's serious illness. Clearly, defendant's allegations of double jeopardy have no merit. Double jeopardy does not attach when a mistrial is ordered with the express consent of the defendant. La. Const. Art. I, § 15; La. Code Crim.P. art. 591.
Thus, this assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 13 AND 14
By means of assignment of error number thirteen, defendant urges that the trial court erred by failing to grant his motion for new trial based on three grounds. Two of the grounds were considered in our discussion of assignments of error numbers five and twelve and found to be meritless. Defendant's third ground is directed to sufficiency of the evidence, as is his assigned error number fourteen.
The proper procedural vehicle for raising the issue of sufficiency of the evidence is by a motion for post-verdict judgment of acquittal. La.Code Crim.P. art. 821; State v. Korman, 439 So.2d 1099 (La. App. 1st Cir.1983). A reviewing court, despite defendant's failure to proceed properly, must consider the evidence, upon a briefed assignment of error, to determine whether or not it meets the constitutional standards of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1977), now codified in Louisiana Code of Criminal Procedure article 821. The standard set forth in article 821 is whether or not, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
La.R.S. 14:42.1(A) defines forcible rape as follows:
Forcible rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
Defendant admitted to having vaginal intercourse with Ms. Smith. Therefore, the only issue on review is whether or not the *1274 evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational juror to conclude that Ms. Smith was prevented from resisting the act by force or threats of violence such that she reasonably believed resistance would not prevent the rape.
In the present case, Ms. Smith testified exhaustively as to the events of December 19, 1986. Her testimony reveals that she and Ms. Doe were abducted in Ms. Doe's car by Emanuel Gordon, who drove the vehicle to the back of the department store parking lot while defendant followed in Gordon's car. The victims were repeatedly threatened with physical violence and forced to remove their clothing. At one point, Gordon threatened to kill the victims. Additionally, defendant, by his own admission, observed the struggle going on inside Ms. Doe's car and did nothing to stop Gordon. In fact, when Ms. Doe managed to roll a window down and scream for help, defendant turned his head and ignored her desperate pleas.
After Ms. Smith was pushed out of her sister's car by Gordon, defendant grabbed her arm and pushed her inside Gordon's automobile. Ms. Smith, visibly upset, pleaded with defendant not to hurt her or allow Gordon to hurt her sister. Defendant replied by advising the victim to just do what he wanted and she wouldn't get hurt. Defendant also warned Ms. Smith to cooperate or he would get his buddy to finish her off. After Ms. Smith finished undressing, defendant grabbed her hand, thereby forcing her to touch his genitals. After telling her to kneel on the seat, defendant began to touch her breasts. Defendant then forced his penis into her vagina. Subsequently, defendant pushed her back down and again engaged the victim in sexual intercourse. Several minutes later, defendant ordered Ms. Smith from Gordon's car after apparently observing that Gordon had finished raping Ms. Doe.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. It is well settled that the testimony of the victim in a rape case is sufficient to establish the elements of the offense. See State v. Rives, 407 So.2d 1195 (La.1981). After viewing the evidence in the light most favorable to the prosecution, any rational juror could have found defendant guilty of forcible rape.
However, the facts in this case do not support a finding of aggravated kidnapping. Aggravated kidnapping includes the forcible seizing and carrying of the victim from one place to another with the intent to force the victim or some other person to give up anything of value as a condition of release. La.R.S. 14:44(1). Defendant was a principal to the forcible seizing and transporting of the victims. By his action, he also sought sexual gratification from the victims, which constitutes something of apparent value for purposes of the statute. State v. Sonnier, 402 So.2d 650, 658 (La.1981), cert. den., 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). However, there is no evidence that he or Gordon intended by their conduct to force the victims or some other person to give up anything of value as a condition of release.
To the contrary, the record indicates that defendant's sexual advances were conditioned on Ms. Smith's being physically harmed if she did not cooperate. The terms of Ms. Smith's release were never mentioned. There is no evidence in the record from which any rational trier of fact could have inferred or otherwise concluded that the victim was deprived of anything of value in exchange for her release or promise of release. See State v. Branch, 475 So.2d 388, 392 (La.App. 1st Cir.1985).
The record does contain sufficient evidence to prove the elements of the crime of simple kidnapping, a responsive offense. Simple kidnapping is defined in La.R.S. 14:45(A)(1) as the intentional and forcible seizing and carrying of any person from one place to another without his consent.
La.Code Crim.P. art. 821(E) allows the appellate court to modify the verdict when the court finds that the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense. Accordingly, the conviction of aggravated kidnapping is reduced to simple kidnapping. The case is *1275 remanded to the trial court for resentencing on that conviction only. Otherwise, these assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 15
By this assignment of error, defendant contends that the trial court erred by imposing an excessive sentence for his aggravated kidnapping conviction. Since that conviction has been reduced to simple kidnapping and the sentence thereby vacated, this assignment of error is now moot.

ASSIGNMENT OF ERROR NO. 16
Defendant contends that the sentence imposed for the forcible rape conviction is excessive.
Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. State v. Blankenship, 496 So.2d 636 (La.App. 1st Cir.1986). A sentence is considered grossly disproportionate if one's sense of justice is shocked when comparing the punishment in light of the harm done to society. Blankenship, 496 So.2d at 637.
Absent manifest abuse of discretion by the trial court, a sentence should not be set aside as excessive. State v. Lanclos, 419 So.2d 475 (La.1982). Defendant's sentence is in the middle range of possible sentences and does not appear grossly disproportionate to the offense committed.
In imposing sentence, the trial court ordered a presentence investigation report, and considered mitigating and aggravating factors as they apply to defendant. See La.Code Crim.P. art. 894.1. The trial court emphasized the impact that the crime was likely to have on the victim, noting the highly repugnant nature of the offense. It also observed that the victim had in no way induced or facilitated the crime and that defendant continued to deny any wrongdoing stemming from his having had sexual intercourse with Ms. Smith under these circumstances.
In mitigation is the fact that defendant is a first felony offender. However, the trial court opined that defendant's total lack of remorse necessitated correctional treatment in a confined environment.
We cannot say that the sentence imposed is excessive under the circumstances. We find no manifest abuse of discretion in the factors considered or in the weight given to those factors.
This assignment of error is meritless.

SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant contends that the trial court erred by granting the state's challenges for cause of prospective jurors, Jefferson Gray and Jonathan Riley.
A review of the voir dire examination convinces us that the trial court did not abuse its discretion in excusing Gray and Riley. Mr. Gray was properly excluded when he indicated that he could not accept the law as given to him by the court, for he felt that evidence of ejaculation should be essential to a finding of rape. Mr. Riley indicated that he felt the penalty for aggravated rape and aggravated kidnapping was too severe, particularly for a principal with a limited active role. See La.Code Crim.P. art. 797(4).
In any event, the record indicates that the state did not exercise all of its peremptory challenges. Therefore, even if the trial court's rulings were erroneous, it did not have the effect of granting the state more peremptory challenges than entitled to by law. Therefore, defendant has no ground for complaint. La.Code Crim.P. art. 800; State v. Dufrene, 461 So.2d 1263, 1267 (La.App. 1st Cir.1984).
Accordingly, this assignment of error lacks merit.

SUPPLEMENTAL ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments of error, defendant contends that the trial court erred in overruling his objection to the state's use of peremptory challenges to excuse prospective *1276 jurors on the basis of race and age. Specifically, defendant alleges that prospective jurors Vera Poledore, a black woman, and Woodrow Wascom, a young white man, were excluded in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree, finding that the trial court properly overruled defendant's objections to the state's use of these peremptory challenges.
In Batson, the U.S. Supreme Court held that the Equal Protection Clause forbids the state from using its peremptory challenges to strike potential jurors of the defendant's race solely on account of their race or on the assumption that jurors of the defendant's race will be unable to impartially consider the state's case against the defendant.
In raising a Batson claim, the defendant must show that: (1) he is a member of a cognizable racial group, (2) the prosecutor has exercised peremptory challenges toward the elimination of venire members of his race, and (3) the facts and circumstances infer that the prosecutor used his peremptory challenges for the purpose of striking minorities. A defendant makes a prima facie showing of discrimination by showing the above three factors and thereby compels the state to come forward with a neutral explanation for challenging black jurors. Batson, 106 S.Ct. at 1723.

State v. Spears, 525 So.2d 329, 332 (La. App. 1st Cir.), writ denied, 532 So.2d 175 (La.1988).
The record in the instant case does not reflect that the trial court found that defendant established a prima facie case of purposeful discrimination to trigger neutral explanations by the state under Batson. Therein, the United States Supreme Court noted:
In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Batson, 106 S.Ct. at 1723.
The record reflects that none of the circumstances in the illustrative listing above are present in the instant case.
When Ms. Poledore was peremptorily challenged, there was no pattern of strikes against blacks giving rise to an inference of discrimination. To the contrary, three black jurors had already been selected on the jury. The trial court noted that two caucasians and one black had been peremptorily excused by the state. Clearly, defendant failed to establish purposeful discrimination.
With respect to Woodrow Wascom, defendant alleges that he was deprived of a trial by his peers since Wascom is of the same age as defendant. However, defendant is misguided in his attempt to apply Batson to the peremptory challenge of Woodrow Wascom, a young white man. The analysis and holding in Batson is confined to the special problem of racial discrimination in selection of jurors. Moreover, Batson is not applicable to use of peremptory challenges against young people. See United States v. Cresta, 825 F.2d 538 (1st Cir.1987), cert. den., Impemba v. U.S., ___ U.S. ___, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). For the foregoing reasons, these assignments of error are meritless.
Therefore, the conviction and sentence for forcible rape are affirmed, the conviction for aggravated kidnapping is reduced to simple kidnapping, the sentence for aggravated kidnapping is vacated, and this matter is remanded for resentencing on the reduced conviction of simple kidnapping.
*1277 AFFIRMED IN PART, AMENDED IN PART, AND REMANDED.
NOTES
[1] Defendant was charged jointly by the same indictment with co-defendant Emmanuel Gordon. Counts II and III of the indictment related to Gordon only. The two men were scheduled to be tried together. However, during the state's case-in-chief, defendant was granted a mistrial when his counsel was unable to continue because of her daughter's serious illness. Trial proceeded against Gordon, who was found guilty of aggravated kidnapping, aggravated rape, and attempted armed robbery. Gordon's appeal of his convictions were affirmed by this Court. State v. Gordon, 533 So.2d 1074. (La. App. 1st Cir.1988)
[2] The names of the victims have been changed to protect their identity.