SCHOTT, Chief Judge.
Defendant was charged with aggravated rape, aggravated kidnapping, and aggravated crime against nature. After a jury trial, a mistrial was declared as to the charge of aggravated rape when the jury could not agree on a verdict. He was acquitted of aggravated kidnapping, but convicted of crime against nature. He was sentenced to five years. The state amended the rape charge to allege the crime of sexual battery, and the defendant pled guilty. He was sentenced to eight years. The sentence on the sexual battery charge was to run concurrently with the sentence imposed on the crime against nature conviction. This conviction and sentence are not a part of this appeal.
By his first assignment of error, the defendant contends that the trial court erred when it denied the defendant’s challenge for cause to a juror whose husband had previously been held hostage and who could not say affirmatively that the experience would not affect her ability to be fair.
Article 1, Section 17 of the Louisiana Constitution grants an accused the right to a full and complete voir dire examination and to the exercise of peremptory challenges. The purpose of voir dire examination is to determine the qualifications of prospective jurors by testing their competence and impartiality. State v. Williams, 457 So.2d 610 (La.1984); State v. Thompson, 495 So.2d 328 (La.App. 4th Cir.1986). The scope of voir dire examination falls within the discretion of the trial judge who is given wide latitude in the regulation of the examination of prospective jurors. Thompson, supra at 330.
Code of Criminal Procedure article 797(2) allows a defendant to challenge for cause a prospective juror on the ground that the juror “is not impartial, whatever the cause of his partiality.” When ruling on a challenge for cause, the trial judge is vested with broad discretion that will not be disturbed on appeal unless shown to *763 have been abused. State v. Brown, 496 So.2d 261 (La.1986); State v. Sylvester, 400 So.2d 640 (La.1981). Where an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. The defendant need only show two things to obtain a reversal of his conviction: (1) that the trial judge erred in refusing to maintain a challenge for cause by him; and (2) that he exhausted all of his peremptory challenges. State v. Smith, 491 So.2d 641 (La.1986); State v. Sugar, 408 So.2d 1329 (La.1982); State v. Sylvester, supra; State v. Monroe, 366 So.2d 1345 (La.1978).
During voir dire, the assistant district attorney asked the jury venire if there was anything else that had not been covered, “any reason at all, religious, moral belief that you don’t feel like you could sit on this type of case? Any reason at all, anything that I haven’t covered. Now’s the time to speak”. The following colloquy ensued:
BY JUROR NO. 135:
My husband was held hostage.
BY THE COURT:
Oh, I see. Your husband was a victim of a crime.
BY JUROR NO. 135:
Yes.
BY THE COURT:
Would that cause you to be unfair?
BY JUROR NO. 135:
I think it might. I’m not real sure.
The hostage part.
BY THE COURT:
I beg your pardon?
BY JUROR NO. 135:
The hostage part.
BY THE COURT:
Kidnapping?
BY JUROR NO. 135:
Kidnapping is why. That’s fine with me.
BY THE COURT:
Ladies and Gentlemen, let me explain something to you. Everybody has been a victim of a crime, that’s in this court. Even if you think you haven’t been, because you probably forgot. You could have had a bike stolen from you at seven. All right? But that does not mean that everybody who was the victim of a crime can’t be a fair and impartial juror. If someone is found guilty of a crime, then that’s what I get paid for. That’s where I step in. You’re not asked to do that. You’re asked to sit here and listen to the facts and to listen to the law, and apply the facts that you hear and believe to the law that I give you. And then you come up with a verdict. If the verdict is guilty, then I take over. So, we’re asking you not to become computers, but we’re asking you to try and put everyday life’s occurrences to one side. This is the only time in your life that you will ever be asked to do this. And its probably why I tell you during orientation that you will never forget it, your jury service. You may not like it. You may have bad things to say about it, but you’ll never forget your jury service. And it’s probably one of the best lessons of life that you’re asked to learn, and that is, listen first before you make up your mind. That’s demanded, that you listen first. Nobody wants to listen any more, they want to make up their mind real quick. You’re asked and demanded to listen first. So, when they’re asking whether or not you have past problems of crime in your background, it’s merely to determine ... and the bottom line is this, whether or not you’re saying, “Hurry up; He’s guilty; Let’s get on with it.” That’s not a fair jury. But this voir dire is not to be giving you all information that would cause you to think, “How can I get out of this?” or, “Yes, I think maybe I may be unfair and partial.” All right. We appreciate you telling us these things because it’s merely a tool for them to decide whether they want you as a juror. But what I’m asking you now is: The fact that your husband was a hostage, was that man involved?
BY JUROR NO. 135:
No, he wasn’t sir.
BY THE COURT:
All right. So, you’re here today to determine whether or not that man com *764 mitted those crimes that you’ve been hearing about.
BY JUROR NO. 135:
It was just a traumatic time for me. BY THE COURT:
It happened recently?
BY JUROR NO. 135:
No.
BY THE COURT:
Well, I think you could be fair and impartial. Let’s move on.
BY MR. GREEN:
Ladies and Gentlemen, I don’t intend to belabor what we talked about the first time around. First of all, do any of you have any questions or anything that you want to say in response to what we talked about before, or perhaps something we haven’t talked about? REPORTER’S NOTE:
The prospective jurors nodded in the negative.
BY MR. GREEN:
Mrs. Haag, I’m sorry. I don’t want to pick on you.
BY JUROR NO. 135:
I’m sorry I said something.
BY THE COURT:
No, Mrs. Haag, don’t be sorry you spoke up. This is what the process is all about. And they have a right to hear. I won’t let him get on you too much. All right? Don’t worry about that. Mr. Green, you may ask Mrs. Haag a few questions.
BY MR. GREEN:
I’m only going to ask her one question. BY THE COURT:
Okay.
BY MR. GREEN:
All right. Think of it this way. Can you assure me that what happened to your husband would not affect you in judging whether Ralph Holmes committed a crime or not? Can you assure me? BY THE COURT:
To the best of your ability.
BY MRS. HAAG:
I’m going to answer because I’m not sure.
BY MR. GREEN:
So, the answer to that question would be that you can’t assure me that it wouldn’t affect you in serving on the jury?
BY MRS. HAAG:
I’m sorry, sir.
BY MR. GREEN:
Well, you know, I’m sorry, Mrs. Haag. BY THE COURT:
All right, the question is. asked and answered. Move on.
BY MR. GREEN:
Right, I challenge for cause.
BY THE COURT:
Denied.
The appeal record indicates that the defendant utilized all twelve of his peremptory challenges, and in fact, used a peremptory challenge to exclude Mrs. Haag from the jury.
The defendant argues that the transcript of the voir dire shows that the prospective juror, Mrs. Haag, stated that the fact that her husband had been kidnapped and held hostage would preclude her impartiality in determining whether the defendant was guilty of kidnapping the victim in the present case and sexually attacking her while she was being held.
In its appellate brief the state argues as follows:
In the instant case, after having an opportunity to speak with Ms. Haag about the incident involving her husband, the court was able to determine that she could be fair and impartial. Ms. Haag informed the court that the incident did not happen recently and did not involve Ms. Haag herself. Furthermore, the court explained to the jury, in no uncertain terms, that they were being asked to set aside “everyday life’s occurrences.”
The transcript of the colloquy between the judge and juror, which is reproduced above, shows clearly that following the court’s statement to the jury the defense attorney asked her if she could assure him that her husband’s kidnapping would not affect her judgment in this case. She said she could not and then apologized.
*765 After this colloquy there was no attempt by the state to rehabilitate the juror. The trial court’s finding that the juror could be fair is not supported by the voir dire transcript. Nowhere in the transcript does the prospective juror state that she could be fair. The juror specifically stated that she could not assure defense counsel that she could be impartial to the defendant. She stated that her husband’s kidnapping had been a very traumatic time for her. The juror was not impartial and the court abused its discretion by failing to excuse her for cause. Since defendant exercised all of his peremptory challenges prior to the empaneling of the jury, he is entitled to a reversal of his conviction and a new trial.
Accordingly, the conviction is reversed and the case is remanded to the trial court for further proceedings.

REVERSED AND REMANDED.