# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **18th day of October, 2017**, are as follows:

**BY WEIMER, J.:**

2016-K -0473        STATE OF LOUISIANA v. DERRICK A. DOTSON (Parish of Orleans)

The state's writ application was granted to consider whether the court of appeal erred in reversing defendant's conviction, finding that the trial judge abused his discretion in denying a challenge for cause of a prospective juror. During voir dire, the prospective juror gave an equivocal answer as to whether she could be impartial after indicating her mother had been the victim of a violent crime. The record of the voir dire proceeding is bereft of any information that would clarify the prospective juror's response, and the remainder of her responses during voir dire indicate that she would be impartial. As such, deference should have been afforded by the appellate court to the trial court's ruling on the challenge. The decision of the appellate court is reversed and this matter is remanded to the appellate court for determination of the remaining issue raised on appeal by defendant. For these reasons, the decision of the appellate court is reversed. This matter is remanded to the appellate court for determination of the remaining issue raised on appeal by defendant.
REVERSED and REMANDED.

GUIDRY, J., dissents and assigns reasons.
HUGHES, J., dissents for the reasons given by Guidry, J.

## SUPREME COURT OF LOUISIANA

### NO. 2016-K-0473

### STATE OF LOUISIANA

### VERSUS

### DERRICK A. DOTSON

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*
*FOURTH CIRCUIT, PARISH OF ORLEANS*

**WEIMER**, Justice.

The state's writ application was granted to consider whether the court of appeal erred in reversing defendant's conviction, finding that the trial judge abused his discretion in denying a challenge for cause of a prospective juror. During *voir dire*, the prospective juror gave an equivocal answer as to whether she could be impartial after indicating her mother had been the victim of a violent crime. The record of the *voir dire* proceeding is bereft of any information that would clarify the prospective juror's response, and the remainder of her responses during *voir dire* indicate that she would be impartial. As such, deference should have been afforded by the appellate court to the trial court's ruling on the challenge. For the reasons that follow, the decision of the appellate court is reversed, and this matter is remanded to the appellate court for determination of the remaining issue raised on appeal by defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1994, K.T. was crossing the street in eastern New Orleans when a man she recognized as someone who had worked with her mother in the past called her to his car. When she walked over, she saw a gun on his lap. He ordered her to get into the car and then drove to a wooded area where he forced K.T. to engage in sexual intercourse. K.T. reported the incident and underwent a sexual assault exam, but the police investigation did not lead to any suspects.

In 1996, H.B. was at home when a man came to the door and asked to speak to her brother. She recognized the man as someone to whom her brother had previously given money. The man claimed that he wanted to thank H.B.'s brother for the money. Later, when H.B's brother left for work, the man returned and claimed that he was locked out of his house. He asked H.B. to make a telephone call for him, and, when she returned to tell him the number did not work, he forced his way into the house and sexually assaulted her. H.B. reported the crime and underwent a sexual assault examination, but the police investigation did not yield any suspects.

In 2010, while investigating unsolved rape cases, a detective of the police force searched the national DNA data base (CODIS) and discovered that DNA from both cases matched that of Derrick A. Dotson (defendant). The state subsequently charged defendant with two counts of aggravated rape. The jury found defendant guilty of the 1996 forcible rape of H.B., but could not reach a verdict as to the charge involving K.T. The court sentenced defendant as a third felony offender to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.

The court of appeal majority reversed defendant's conviction, finding the trial court abused its discretion by denying defendant's challenge for cause of a prospective juror after defendant exhausted all of his peremptory challenges. **State**

**v. Dotson**, 15-0191, p. 8 (La.App. 4 Cir. 12/17/16), 187 So.3d 79, 83-84. At issue was whether the prospective juror, whose mother had been raped and murdered, could be impartial. When asked by the trial court if the circumstances related to her mother's death had any bearing on her ability to be impartial, she stated, "Yes, it might." No direct follow-up questions were asked by the trial court, the state, or the defense as to this particular response. Although the prospective juror was not asked to, and did not, provide any additional insight to this particular response, the appellate court found that "bias, prejudice, or the inability to render judgment according to law can be reasonably implied" from her initial response. **Dotson**, 15-0191 at 8, 187 So.3d at 84. Accordingly, the trial court was found to have abused its discretion by denying defendant's challenge for cause.

The state's writ application was granted to determine if the trial court abused its discretion in finding that defendant failed to prove that the prospective juror was not impartial. **State v. Dotson**, 16-0473 (La. 3/24/17), 216 So.3d 809.

## DISCUSSION

Louisiana Constitution article I, section 17 guarantees a defendant the "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." **State v. Juniors**, 03-2425, p. 7 (La. 6/29/05), 915 So.2d 291, 304. The number of peremptory challenges granted to a defendant in a trial of an offense punishable necessarily by imprisonment at hard labor, such as the one currently before this court,[1] is fixed by law at twelve. See La. Const. art. I, § 17(A); La. C.Cr.P.

---

[1] See La. R.S. 14:42.1(B) ("Whoever commits the crime of second degree rape shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of probation, parole, or suspension of sentence."); see also La. R.S. 14:42.1(C) ("For all purposes, "forcible rape" and "second degree rape" mean the offense defined by the provisions of this Section and any reference to the crime of forcible rape is the same as a reference to the crime of second degree rape.").

3

art. 799.[2] When a defendant uses all twelve of his peremptory challenges, an erroneous ruling by a trial court on a challenge for cause that results in depriving the defendant of a peremptory challenge constitutes a substantial violation of the defendant's constitutional and statutory rights, requiring reversal of the conviction and sentence. **Juniors**, 03-2425 at 7-8, 915 So.2d at 304; see La. C.Cr.P. art. 921 ("A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused."). Therefore, prejudice is presumed when a challenge for cause has been erroneously denied by a trial court and the defendant exhausts all peremptory challenges statutorily afforded to the defendant.[3] **Juniors**, 03-2425 at 8, 915 So.2d at 305 (citing **State v. Robertson**, 92-2660, p. 3 (La. 1/14/94), 630 So.2d 1278, 1280, and **State v. Ross**, 623 So.2d 643, 644 (La. 1993)). In summary, where all peremptory challenges have been used, as in this case, a defendant need only demonstrate the erroneous denial of a challenge for cause to establish reversible error warranting reversal of a conviction and sentence. See **Juniors**, 03-2425 at 8, 915 So.2d at 305.

A defendant may challenge a juror for cause if "[t]he juror is not impartial, whatever the cause of his partiality." La. C.Cr.P. art. 797(2). Additionally, La. C.Cr.P. art. 797(3) provides a defendant may challenge a juror for cause on the ground that "[t]he relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the

---

[2] In pertinent part, La. C.Cr.P. art. 799 provides: "In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have twelve peremptory challenges, and the state twelve for each defendant."

[3] If all available peremptory challenges have not been used, a defendant must show some prejudice to overcome the requirements of La. C.Cr.P. art. 921 (quoted *supra*). **State v. Robertson**, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280.

district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." A "juror [who] will not accept the law as given to him by the court" may also be challenged for cause by the defendant. See La. C.Cr.P. art. 797(4).

*Voir dire* examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. **State v. Drew**, 360 So.2d 500, 513 (La. 1978). The questions propounded are designed to determine any potential adverse influence on the prospective juror's ability to render an impartial verdict. See *id*. A prospective juror's responses during *voir dire* cannot be considered in isolation. See **State v. Frost**, 97-1771, p. 8 (La. 12/1/98), 727 So.2d 417, 426.

A trial judge is vested with broad discretion in ruling on challenges for cause, and such a ruling is subject to reversal only when a review of the entire *voir dire* reveals the judge abused his discretion. **Robertson**, 630 So.2d at 1281. The trial judge's refusal to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the prospective juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. *Id*.

During *voir dire*, the trial court was questioning prospective juror number 9 ("K.C."), who indicated she was an attorney, when the following exchange took place:

[Court:]     [K.C.], are you familiar with the people involved in today's case?

[K.C.:]     No, sir.

[Court:]     Anything about the facts of the case?

5

| | |
|---|---|
| [K.C.:] | It may be a case I've been reading about in the paper, but I'm not sure. |
| [Court:] | Okay. Hold that thought. |
| [Court:] | Have you served on a jury before? |
| [K.C.:] | Yes, sir. |
| [Court:] | What kind of case? |
| [K.C.:] | A possession of a narcotics case and the defendant took an acquittal. |
| [Court:] | Was that recently? |
| [K.C.:] | A few years. |
| [Court:] | Have you or close friends or relatives ever worked in law enforcement? |
| [K.C.:] | No, sir. |
| [Court:] | Have you or a close friend or relative been a crime victim? |
| [K.C.:] | Yes, sir. |
| [Court:] | Could you tell us a little bit about that? |
| [K.C.:] | My mother was raped and murdered. |
| [Court:] | Would that event have any bearing on your ability to be a fair and impartial juror in today's case? |
| [K.C.:] | **Yes, it might**. |
| [Court:] | Do you have any questions for me? |
| [K.C.:] | No. |
| [Court:] | Thank you very much. [Emphasis added.] |

At this point, the trial court did not ask any follow-up questions of K.C.'s responses.

When K.C. was later questioned in chambers, the following colloquy took place:

6

The Court: .... [K.C.], number 9, said that she saw something in the news.

[Defense:] That's the one that the mother was raped and killed.

The Court: [K.C.], would you have a seat right here and make yourself comfortable. [K.C.], earlier today when I asked you the question do you know anything about the facts of the case, you said I think this is the case I've been reading about in the news. Is that what you said?

[K.C.]: Correct.

The Court: Can you expound on that?

[K.C.]: I was thinking this man was a New Orleans Police Officer. I've been reading some articles about a police officer being accused of rape. It doesn't sound like it from *voir dire* that it's the same case.

The Court: If it turns out that this is not that case, whatever you've been reading in the news about a police officer, have any bearing on your ability to be a fair and impartial juror?

[K.C.]: No.

The Court: State?

[State:] No questions.

The Court: Defense?

[Defense:] None, your Honor.

The trial judge's comment during *voir dire* ("Hold that thought.") and the questions asked by the trial judge of K.C. in chambers indicate that K.C. was taken into chambers for further questioning regarding her knowledge of the case based on media coverage. Aside from recognizing that K.C.'s mother had been raped and murdered, defense counsel did not revisit K.C.'s prior response regarding whether her mother's ordeal would affect K.C.'s ability to be impartial in defendant's cases.

When defense counsel later challenged K.C. for cause, the following exchange took place:

7

The Court:   .... Panelist Number 9.

[State]:   Acceptable.

[Defense]:   Challenge for cause, Your Honor.

The Court:   Cause based on what?

[Defense]:   Her mother was murdered and raped.

The Court:   That's not cause.

[Defense]:   She said that would --

The Court:   No, she didn't.

[Defense]:   Yes, she did.  Also, she said she knows a witness.

The Court:   She never said that.

[Defense]:   [K.C.] said that -- didn't she --

The Court:   What witness did she say she knew?

[Defense]:   I don't remember.

[State]:   Ann Montgomery, but she said she doesn't remember really how she knows her.  It would not affect her ability to be fair and impartial.

The Court:   Is that going to be D2?

[Defense]:   No. Judge, she said –

The Court:   Is that going to be D2?  The cause is denied.

[Defense]:   It's denied.

The Court:   Is that going to be D2?

[Defense]:   If it has to be.

[Defense]:   D2.

The Court:   Well, it doesn't have to be.  It can be J3.

[Defense]:   She said –

The Court:   Look, that's the fifth time you've told me that.  ...

8

Defendant's challenge for cause as to K.C. was related to the following facts: (1) K.C.'s mother was raped and murdered; and (2) K.C. testified that her mother's ordeal might affect her impartiality in this case. Because the basis for defendant's challenge does not involve a relationship described in La. C.Cr.P. art. 797(3) (quoted *supra*), the ground at issue in this case is La. C.Cr.P. art. 797(2) (quoted *supra*).[4]

The above-quoted colloquy pertaining to defendant's challenge reveals the trial judge found that K.C.'s "[y]es, it might" response (to the trial judge's question concerning whether her mother's ordeal would have a bearing on her ability to remain impartial) alone was insufficient to establish K.C. could not be impartial so as to constitute cause for excusing her under La. C.Cr.P. art. 797(2). In support of the trial judge's finding, the state contends K.C.'s response in this regard is equivocal and open to interpretation. Further, the state urges that defense counsel was given an opportunity to further question the prospective juror as to this response, but did not do so. Lastly, given the totality of the *voir dire*, because the prospective juror never definitively stated she could not be impartial based on her mother's rape and murder, the state argues the trial court acted within its discretion by denying defendant's challenge for cause of K.C. On the other hand, defendant maintains K.C.'s response in and of itself demonstrates she could not be impartial, the state was obligated to rehabilitate K.C. and did not, and the appellate court was correct in finding an abuse of discretion by the trial court.

---

[4] Courts have imposed the test set forth in La. C.Cr.P. art. 797(3) (that is, the relationship is such that one might reasonably conclude that it would influence the juror in arriving at the verdict) in addressing a prospective juror's relationship to others who are not listed in Clause (3). See **State v Robinson**, 353 So.2d 1001, 1004 (La. 1977) (relationship with people associated with law enforcement duties); **State v. Calloway**, 343 So.2d 694, 696 (La. 1976) (nephew was a police officer); **State v. McClure**, 258 La. 999, 249 So.2d 109, 113 (1971) (friendship with the clerk of court).

9

Although the trial judge at times cut off defense counsel during the challenge phase, the record of the *voir dire* indicates that defense counsel was in no way deprived of an opportunity to question K.C. about her "[y]es, it might" response regarding her mother's ordeal. While in chambers, the trial judge afforded the parties an opportunity to further question K.C. After reminding the court that K.C. stated that her mother had been raped and murdered, counsel for defendant declined to further question K.C. in this regard. Furthermore, contrary to defendant's assertion, the record does not indicate that the trial judge did not have any recollection of K.C.'s "[y]es, it might" response to the trial judge's question during *voir dire* about K.C.'s ability to be impartial. During the challenge phase, the trial judge first simply observed that the fact that K.C.'s mother was raped and murdered does not constitute cause.

"[T]he fact that a juror may have painful memories associated with the subject of a criminal trial is not listed as a basis for a challenge for cause under La.C.Cr.P. art. 797." **State v. Magee**, 13-1018, p. 12 (La.App. 5 Cir. 9/24/14), 150 So.3d 446, 454, <u>writ denied</u>, 14-2209 (La. 10/2/15), 178 So.3d 581. That a prospective juror personally has been the victim of a crime will not necessarily preclude that prospective juror from serving on a jury. **State v. Dorsey**, 10-0216, p. 3 (La. 9/7/11), 74 So.3d 603, 631. A prospective juror's relationship to a person who was the victim of a crime likewise does not disqualify a prospective juror from serving. See *id.*; **State v. Nix**, 327 So.2d 301, 326 (La. 1975) (a prospective juror's relationship to a murder victim–his brother-in-law–was insufficient to establish cause for excusing the venireman).

The law does not require that a jury be composed of individuals who have not personally been a crime victim or who do not have close friends or relatives who have

10

been crime victims. It requires that jurors be fair and unbiased. **Juniors**, 03-2425 at 11, 915 So.2d at 306. Therefore, the prospective juror's past experience as, or relationship to, a victim of a crime similar to that for which the defendant is being tried must be examined in conjunction with other evidence in the record of the *voir dire* proceeding that bears on the prospective juror's ability to be fair and impartial and to apply the law as instructed by the trial court. See **Dorsey**, 10-0216 at 38-39, 74 So.3d at 631; **Nix**, 327 So.2d at 326. Accordingly, the trial court did not abuse its discretion in refusing to find that K.C.'s relationship with her mother, who was raped and murdered, automatically rendered K.C. unable to be impartial in these cases. Although the record establishes a mother/daughter relationship, and this court is sensitive to the impact of crime on a family member, we are constrained by the record which reflects no follow-up questions were posed to in fact establish this prospective juror could not be fair and impartial in these cases.

Upon the trial judge's recognition that K.C.'s relationship with a rape victim was alone insufficient to disqualify K.C., defense counsel referenced K.C.'s response to the trial judge's question regarding her ability to be impartial due to her mother's ordeal. Defense counsel interpreted K.C.'s response as "yes," that is, K.C. could not be impartial in the instant cases against defendant. However, as the trial judge again correctly observed, K.C. did not declare that her mother's rape and murder would affect her ability to be impartial, as her affirmative response was immediately qualified by an expression of uncertainty–"it might."[5] In this respect, K.C.'s testimony differs from that of prospective juror number 20, who testified that as a victim of molestation she could not be impartial and who was dismissed by the trial

---

[5] "Might" is defined as "expressing especially a shade of doubt or a smaller degree of possibility or permission." WEBSTER'S NEW WORLD DICTIONARY OF THE AMERICAN LANGUAGE 932 (College Edition 1964). Such definition confirms the equivocalness of K.C.'s response.

11

court on a challenge for cause.[6] Based on the qualification of K.C.'s affirmative response, this court cannot say that the trial court erred or abused its discretion in finding that K.C. at no point declared that she could not be impartial in these cases; nor from this lone response can "bias, prejudice, or the inability to render judgment according to law ... be reasonably implied,"[7] as found by the appellate court. Furthermore, K.C.'s conditional response neither required that K.C. be rehabilitated,[8] nor relieved defendant (who sought to exclude K.C. for cause) of his burden of demonstrating, through questioning, that K.C. lacked impartiality. See **State v. Taylor**, 99-1311, p. 8 (La. 1/17/01), 781 So.2d 1205, 1214 ("The party seeking to

---

[6] Prospective juror number 20 testified as follows:

| The Court: | Have you or any close friends or relatives been a victim of a crime? |
|---|---|
| Juror [ ]: | Yes. |
| The Court: | Can you tell us a little bit about that? |
| Juror [ ]: | My husband was murdered. My house was broken into and I was molested at 12 years old. |
| The Court: | Would those events have -- |
| Juror [ ]: | Yes. |
| The Court: | Let me finish the question. Would those events have any bearing on your ability to be a fair and impartial juror? |
| Juror [ ]: | Yes. |
| The Court: | So you could not serve as a fair and impartial juror in this case? |
| Juror [ ]: | That's correct. |

[7] *Cf.* **Juniors**, 03-2425 at 9, 915 So.2d at 305 (a challenge for cause should be granted "if [the prospective juror's] responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied.").

[8] *Cf.* **State v. Mickelson**, 12-2539, p. 23 (La. 9/3/14), 149 So.3d 178, 193 (which addressed the need "to rehabilitate a prospective juror whose unequivocal statements in *voir dire* evidence an inability to follow the law," implicating La. C.Cr.P. art. 797(4). **Mickelson** does not mandate rehabilitation of a prospective juror whose statements are equivocal and who simply indicated that he or she might not be able to be fair.

exclude the [prospective] juror has the burden to demonstrate, through questioning, that the [prospective] juror lacks impartiality.").

In **Nix**, 327 So.2d at 326, a murder trial, the trial court denied defendant's challenge for cause of a prospective juror who testified that the murder of his brother-in-law might affect his thinking on the case. The equivocalness of that statement, together with the prospective juror's testimony "that he understood the principles of law upon which he was instructed by the trial judge, including the presumption of innocence, and that he could apply those principles in the case at bar" was found by this court to be sufficient to support the trial court's denial of the defendant's challenge for cause. *Id*.

Other cases involving equivocal responses that were found by this court to be insufficient to obtain reversal of the trial court's denial of a challenge for cause include: **State v. Robinson**, 353 So.2d 1001, 1004 (La. 1977) (Where a prospective juror's impartiality was brought into question by her "maybe not" response to whether she would acquit the defendant of one crime even if she thought he was guilty of other misconduct, this court found no abuse of discretion in the trial court's denial of a challenge for cause in light of the prospective juror's subsequent responses which indicated she would be impartial.); **State v. Passman**, 345 So.2d 874, 879-80 (La. 1977) (A prospective juror responded that he might be influenced by whether the defendant took the stand on his own behalf, implicating La. C.Cr.P. art. 797(4). Furthermore, when asked if he would have trouble following the trial judge's instruction not to consider whether the defendant testified in weighing the defendant's guilt, the prospective juror in **Passman** indicated that he "may have trouble and [he] may not." However, on further questioning by the trial judge, the prospective juror clarified that he would accept and apply the law in deciding whether

13

the defendant is guilty. This court found no abuse of discretion in the denial of the defendant's challenge for cause.); **State v. Frazier**, 283 So.2d 261, 263-64 (La. 1973) (an equivocal answer given by the prospective juror ("I could try.") to the trial judge's question, "If [defendant] did not take the stand do you feel that you could return a fair and impartial verdict based on the evidence and the testimony that you did hear," did not amount to a refusal to accept the law as charged so as to implicate La. C.Cr.P. art. 797(4).)

Also noteworthy on this point is **State v. Robinson**, 08-0652 (La.App. 4 Cir. 5/13/09), 11 So.3d 613, writ denied, 09-1437 (La. 2/26/10), 28 So.3d 269. In response to a question by the prosecutor, a prospective juror in **Robinson** "stated during *voir dire* that she did not know whether she could be impartial due to the fact that three of her children had been crime victims." *Id*., 08-0652 at 11, 11 So.3d at 620. In analyzing this equivocal response, the appellate court found that the prospective juror only "stated that she did not know if she could be impartial and did not affirmatively state she could not be" and observed "that defense counsel never asked [the prospective juror] any questions at all." *Id*, 08-0652 at 13, 11 So.3d at 621. The **Robinson** court concluded that the prospective juror's "responses as a whole [did not reveal] facts from which bias, prejudice, or an inability to render judgment according to law might be reasonably implied." *Id*.

In **State v. Ruffin**, 11-0135 (La.App. 4 Cir. 12/21/11), 82 So.3d 497, writ denied *sub nom*., **State ex rel. Ruffin v. State**, 12-0400 (La. 9/12/12), 98 So.3d 813, a prospective juror responded that "it may" when asked if "her niece's death would affect her ability to sit on the jury." *Id*. 11-0135 at 25, 82 So.3d at 514. Upon further questioning, this prospective juror revealed that serving as a juror would be emotional for her in that it would likely cause her to have flashbacks. She testified that her

14

niece's killers were still at large, and she had still not gotten over the incident. *Id*. Based on this information, the defendant urged that the prospective juror was unable "to be a rational and unbiased juror," citing **State v. Holmes**, 619 So.2d 761 (La.App. 4 Cir. 1993), discussed *infra*. *Id*. Relying instead on its decision in **Robinson**, the appellate court found no abuse of discretion in the trial court's denial of the defendant's challenge for cause since the prospective juror "did not say unequivocally that her [great]-niece's death would prevent her from being an impartial juror." *Id*. 11-0135 at 26-27, 82 So.3d at 514-15.

In the instant case, in reviewing the trial judge's denial of defendant's challenge, instead of relying on this court's decision in **Nix**, the facts of which are strikingly similar to those of the instant case, or its decisions in **Robinson** and **Ruffin**, the appellate court relied on its decision in **Holmes**. The defendant in **Holmes** was charged with aggravated rape, aggravated kidnapping, and aggravated crime against nature. On appeal of his conviction for aggravated crime against nature, the defendant argued that the trial court committed reversible error in denying his "challenge for cause to a [prospective] juror whose husband had previously been held hostage and who could not say affirmatively that the experience would not affect her ability to be fair." **Holmes**, 619 So.2d at 762. When the members of the jury venire were questioned by the state about why they did not "feel like [they] could sit on this type of case," the prospective juror stated that her "husband was held hostage." *Id*. at 763. When the court asked if the fact that her "husband was a victim of a crime" would cause her to be unfair, she stated, "I think it might. I'm not real sure." *Id*. During further questioning by the trial court, the prospective juror explained that her husband's kidnapping had been a very traumatic time for her. *Id*. at 764. Defense counsel followed up by asking the prospective juror if she could "assure [him] that

15

what happened to [her] husband would not affect [her] in judging whether [the defendant] committed a crime or not." *Id*. She relied, "I'm not sure." *Id*. In reviewing the trial court's denial of the defendant's challenge for cause as to this prospective juror, the appellate court noted that the prospective juror stated that she could not assure defense counsel "that her husband's kidnapping would not affect her judgment in [the] case" and observed that the state failed to rehabilitate the prospective juror. *Id*. at 764-65. Concluding that "[t]he trial court's finding that the [prospective] juror could be fair is not supported by the voir dire transcript," the appellate court held that "[t]he [prospective] juror was not impartial and the [trial] court abused its discretion by failing to excuse her for cause." *Id*. at 765. The defendant's conviction was reversed, and a new trial was ordered. *Id*.

Defendant argues, and the appellate court found, that the facts of the instant case are more akin to those of **Holmes**, while the state likens the facts of this case more to the facts of **Robinson** and **Ruffin**. Unlike **Holmes**, the prospective juror in this matter (K.C.) was not questioned further by anyone as to her "[y]es, it might" response. For this reason, the instant case, like **Robinson** and **Ruffin**, is clearly distinguishable from **Holmes**.[9] As in **Nix**, K.C.'s use of the word "might" relative to the impact that her family member's ordeal as a victim of a similar crime would have on K.C.'s ability to be impartial in the instant cases rendered her response equivocal. Because of the equivocalness of K.C.'s response, the need for rehabilitation of K.C. by the state had not been triggered in this case. Furthermore, unlike the prospective juror in **Holmes**, K.C. was never asked to assure that she could be impartial to the defendant in these cases.

---

[9] Neither party sought writs in this court in **Holmes**. Without a review of the full *voir dire* in **Holmes**, this court expresses no opinion regarding the appellate court's decision therein.

16

Clearly, La. C.Cr.P. art. 797(2) does not require that a prospective juror state with absolute certainty that he/she cannot be impartial in order to be removed for cause. However, in the absence of such a statement, the trial court's denial of a challenge for cause will not be reversed if, on review of the entire *voir dire* examination, the prospective juror demonstrates a willingness and ability to decide the case impartially according to the law and evidence. **Passman**, 345 So.2d at 880. Reversal is appropriate only where it appears, upon review of the *voir dire* examination as a whole, that the trial judge's exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the accused. *Id*.; see **Dorsey**, 10-0216 at 28, 74 So.3d at 625; **State v. Lee**, 93-2810, p. 9 (La. 5/23/94), 637 So.2d 102, 108. This standard of review is utilized "because the trial judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questions by the parties' attorneys." **Lee**, 93-2810 at 9, 637 So.2d at 108. "Such expressions and intonations are not readily apparent at the appellate level where review is based on a cold record." *Id*. As noted in **State v. Miller**, 99-0192 (La. 9/6/00), 776 So.2d 396, because of the "complicated and oftentimes daunting" task faced by a trial court in deciding "challenges for cause of prospective jurors who give equivocal ... responses during *voir dire*," "an appellate court should accord great deference to the [trial] court's ruling on a challenge for cause, which is necessarily based, in part, on the court's personal observations during questioning." *Id*., 99-0192 at 14, 776 So.2d at 405-06. A review of the entire record of the *voir dire* proceedings in this case does not suggest that the trial court's exercise of the sound discretion afforded in determining K.C.'s competency was arbitrary or unreasonable, to the prejudicial injury of the defendant in obtaining a fair and

17

impartial trial.[10]  Furthermore, the appellate court erred to the extent that it found

K.C.'s responses as a whole reveal facts from which "bias, prejudice or inability to

render judgment according to law may be reasonably implied."  Accordingly,

defendant failed to show any abuse of discretion in the trial court's refusal to grant

his challenge for cause as to K.C.

## DECREE

For these reasons, the decision of the appellate court is reversed.  This matter

is remanded to the appellate court for determination of the remaining issue raised on

appeal by defendant.

**REVERSED and REMANDED.**

---

[10]  Early on in the jury selection process, before *voir dire* of individuals began, the trial judge read aloud to the venire the relevant parts of the indictment, which alleged two counts of aggravated rape. The trial judge then asked generally: "[B]ased on what you've heard, any problems with difficulty in serving on a jury involved in this type of a situation?  Anyone?"  There was no response from the prospective jurors.  Shortly thereafter, upon hearing the definition of aggravated rape and being asked if there were any questions or comments, the prospective jurors again remained silent.  Then, just before individual *voir dire* commenced, the trial judge asked the prospective jurors: "Can anybody think of any reasons based on the things we've discussed so far why you couldn't be a fair and impartial juror in this case, anything whatsoever?"  Once more, the trial judge was met with no response.  Finally, in the middle of the state's *voir dire*, the trial judge intervened to clarify the state's burden of proof, asking at the end if everyone followed what the trial judge told them; the response from the venire was "[y]es."  Also noteworthy is the fact that K.C. is an attorney, trained in the law and legal concepts applicable in a criminal trial, including the obligation of a juror to be fair and impartial.  In fact, K.C. advised she had previously served on a jury in a criminal case in which the defendant was acquitted, a favorable response for a defendant.

SUPREME COURT OF LOUISIANA

No. 2016-K-0473

STATE OF LOUISIANA

VERSUS

DERRICK A. DOTSON

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,*

*FOURTH CIRCUIT, PARISH OF ORLEANS*

**Guidry, J., dissents and assigns reasons.**

I respectfully dissent from the majority's decision today. In this case, the potential juror expressed during *voir dire* an undoubtedly equivocal response that she "might" be impartial or biased against this defendant, charged with two counts of aggravated rape, because her mother had been raped and murdered. In the face of this clear expression of possible bias, there was no follow-up questioning by the trial court, the state, or the defense as to whether the juror would be willing and able to decide the case impartially according to the law and evidence. The trial court, when the prospective juror was later challenged for cause, did not allow a full discussion of the juror's response regarding her possible bias, and more troublingly, insisted the potential juror had not said anything that would bring into question her inability to be impartial, when in fact she did. *See Anti*, pp. 6 and 8; *State v. Dotson*, 15-0191 p. 8 (La. App. 4 Cir. 2/17/16), 187 So.3d 79, 83-84.

This court will not reverse a trial court's ruling on a challenge for cause unless it appears, upon review of the *voir dire* examination as a whole, that the trial judge's exercise of its discretion has been arbitrary or unreasonable, resulting in prejudice to the accused. *Anti*, p. 17. While deference is certainly owed to the trial court's determination, where due, I find in this case the trial court abused its discretion, because, upon review of the prospective juror's *voir dire* examination as a whole, her bias, prejudice, or the inability to render judgment according to the

law may be reasonably implied. Accordingly, I would affirm the appellate court's decision.

10/18/17

SUPREME COURT OF LOUISIANA

No. 2016-K-0473

STATE OF LOUISIANA

VERSUS

DERRICK A. DOTSON

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FOURTH CIRCUIT, PARISH OF ORLEANS


Hughes, J., dissents for the reasons given by Guidry, J.